I represent Starline Tours of Hollywood 8. I would like to reserve 5 minutes for rebuttal, and I'll keep track of my time. This appeal arises from the District Court's orders to deny Starline the right to amend its counterclaims, and also dismissing Starline's claims that it was alleged in its first amended counterclaims. Unfortunately, the case fell into the procedural moot grinder of having an arbitration process as well as a non-arbitration process. Starline and TSM-DMG, which was one of the subsidiaries of Warner Brothers, had a contract, and they brought suit in the District Court against Starline. And when Starline counterclaimed, TSM moved to compel arbitration, which then resulted in a little bit of a return to politics. The court had ordered the arbitration of Starline and TSM to go to jams to take place, and things had a little bit of a take. But before the state was imposed, Warner Brothers had filed a motion to dismiss the counterclaims. But all of that got changed in May of 2016, and the case had barely gotten out of the gate. After a two-year stint, the case came back at the end of May of 2018, and the arbitration was on its own track. Warner Brothers and Starline were back in court, but there was a single claim against TSM that was still before the District Court for a disciplinary moot. After the scheduling conference, the court set a call break, set a status conference, and set the case on its usual way. In the interim, Starline wanted to amend and met and conferred with Warner Brothers' counsel about amending. There was no agreement, and after that meeting was closed as well, Starline filed its motion to move to amend to file a second amended counterclaim. The court took up the matter in October of 2018, and decided that Starline was not entitled to amend and grant or withhold Warner Brothers' motion to dismiss, which then would have given the right to come back to a more full-fledged court to proceed with the case. The final status conference was scheduled to take place in February, and Starline filed a statement with the Supreme Court. The District Court, indicating that the case seems to need a dismissal because part of Warner Brothers was not pursuing the claim, and Starline had one claim against TSM that was decided effectively in the arbitration proceedings, and by then, on the track of the arbitration, Judge O'Neill or our District Court judge also decided that that case was not related to what was before him. In the statement filed with the courts, in the line of defense of the fact of the law, counsel, are you executing the request for dismissal from Starline? No, Your Honor. I'm assuming the matter was brought to the court's attention, and I think the lesson ends there. What do you mean? At that point, correct? Well, not exactly, Your Honor. I think what happened was the parties filed a stipulation that the court had suggested in order to not appear unnecessarily for a case that was not going to go anywhere. If people were going to dismiss, to file a request for dismissal, which the parties filed a stipulation to that effect, essentially at the suggestion of the District Court, and I would imagine that the District Court suggested that that would not be something the court would object to, but I think that the true positive of that fact is there was a final status conference set, and the trial date is set shortly after. If you have a final status conference or a trial, and as counsel you don't show up, the District Court is going to let you know that you did exactly the bad, bad thing. So in this case, I think the court took those matters off calendar, and it's an indication. And then there was a filing in the docket that reflected the matter was closed by way of that stipulation. So I think to the extent that we're talking about the District Court being involved, we don't have a signature from the judge. I guess, in retrospect, you would love to have. But what we have is, I think, there's a shadow over this. No one left behind the judge. No one tried to hide or file a unilateral or anything. I think both parties submitted basically on the suggestion that we should not go on with a lawsuit that has nothing left in it. Both from plaintiff Warner Brothers' side and the one thing that was left on the star line as a claimant. So it's our position that the submission of the dismissal and the courts taking off the hearings off calendar and ending the matter, essentially ended everything that was before the District Court at that time for that purpose. The crux of our appeal before you is that the standards for granting leave, I think we've proved that. I guess we've learned that. I'm not sure if it's a brief. Sorry about that. We kind of put all the rules that were going on, but we think the court did not apply the correct standard. And essentially, when we were told that the District Court did, the court believed that there was a new delay. And that's the sole reason, and I think we saw in one of our Supreme Court cases, it's pretty clear that delay alone is not a justification for denial. Nor do we think objectively, given the facts of this case, there was any substantial delay. Starline filed its motion to amend shortly after the stay was lifted. The file that hadn't come to sort of cut off, hadn't come, the motion cut off, hadn't come. There were a whole host of factors that indicate there was not on these delays. And there wasn't anything in terms of preventing the moving of goods itself. Can I interrupt you? I just really need you to clarify for me. What exactly are the actions of the District Court that you believe rise to the level of meaningful participation in the settlement of this case? The District Court suggested the, by stipulation, so the parties would appear. So by converse, if that suggestion had not been... So where is that in the record? Was that in the status conference transcript? Your Honor, it was not, because that was to avoid the status conference. The stipulation to the District Court that appears at Excerpt for the Record, page 041 to 042, actually specifically on the second page of it, on line 4, says, and at the suggestion of the court to avoid an unnecessary attempt at the pre-trial conference scheduled for Tuesday, February 19, stipulated to voluntarily dismiss the remaining courts for the action. The court's direct pen was not involved. The court's shadow definitely was involved. Wait, so there's that, okay, there's that action, the suggestion. Is there anything else that you think constitutes meaningful participation? If you look at the Excerpt for the Record, page 040, there's a report that's on the filing or determination of an action regarding patent or trademark, and in that form, that's a court form, it has a decision judgment section, and it expresses page 2-13-19, stipulation to dismiss case pursuant to FRCP. So we think those things would not have happened in a unilateral judicial case, we think the court taking the hearings that were on calendar for the subsequent weeks off calendar, there's no indication of the court's displeasure with not having those matters come up on its calendar, we think shows that court was substantially involved in directing the dismissal of this case and was aware of it, and we consider that at least a judicial involvement because nobody was trying to be in or out of the court's authority. Unless there was a specific question, I think it was June 3rd, and I don't want to belabor the point, but if there was a question about something, I would try to try to answer it, otherwise I'll reserve my time. All right. Thank you, counsel. Mr. Espinche? Good morning, Your Honor. This is Andrew Espinche of Dury Tongari LLP, for Apelli's EHM Productions, Inc., and Warner Brothers Entertainment, Inc. May it please the court, the recent case of DeLazio v. Ward has set forth the rule that decides jurisdiction in this case. It says, quote, We therefore hold that when a party that has suffered an adverse partial judgment, as occurred here, subsequently dismisses any remaining claims without prejudice, as occurred here, and does so without the approval and meaningful participation of the district court, as here, this court lacks jurisdiction under 28 U.S.C. 1291. That's at 954 F. 3rd, 1272. That holding follows the holding of American States Insurance Company and James B. Price Insurance Loan. Under straightforward application of GALAZA, the court lacks jurisdiction over the appeal. Appellants argue that GALAZA recognized that the court may treat a dismissal without prejudice as one with prejudice, where such an intent is evident in their supplemental letter briefed at 2. But that is not the holding of GALAZA. GALAZA stated, again, where there is a voluntary dismissal without prejudice, quote, The district court's involvement was needed to establish whether that dismissal would produce a final, appealable order or judgment. Again, that's at 954 F. 3rd, 1272. The approach that Starline advocates is that of Judge Paez's concurrence in GALAZA,  But Judge Paez's opinion was at odds with the majority, as even he recognized, in wanting to do away with the requirement that the district court be meaningfully involved and participate in the dismissal. The requirement that the district court meaningfully participate in dismissal without prejudice serves an important purpose. It's not merely a procedural mechanism. The record on appeal is unlikely to allow a panel to determine the party's intent and whether manipulation might be present. The district court, by contrast, is in a far better position to make these determinations. Evading that critical step puts the onus on the appellate court to try to discern issues of intent instead of manipulation, from what is often minimal evidence in the record. Such an effort would not only be speculative, but if accepted, the well-established rule that dismissals without prejudice do not create appealable judgments would cease to exist. I'll now move to whether the district court meaningfully participated in the dismissal here, as Judge Wardlaw had specifically asked about. The actions pointed out by opposing counsel do not approach the level of meaningful participation. The first conduct that was mentioned was that the court had suggested that there be a dismissal. Such a suggestion first came before there was any dismissal. Secondly, it says nothing about whether the dismissal would be with or without prejudice. The court was merely noting that there was a final status conference coming up, and the parties should decide what they were doing with the case. Secondly, the report to the county trademark office was on its face in the record at ER 40 issued by the clerk, not by the court. There's no indication that the district court had any participation in that document. In fact, it was issued the day after the stipulation was submitted, indicating that it is done pro forma upon the stipulation of the parties, and it notes on its face that the stipulation called for a dismissal under Rule 41A1A, which does not require a court order. So, neither of those acts constitute meaningful participation. In this case, as in Galazza, the district court was not asked to and did not enter an order approving the stipulation. As in Galazza, the district court was not asked to and did not enter judgment following the stipulation. Well, was the case closed? The case in front of the district court was, upon a dismissal by the parties. There were no more claims pending, and as a matter of procedure at that point, the clerk did close the case. Well, it seems to me, having been a district court judge, it does seem to me that having dismissed the granting order's motion to dismiss the First Amendment counterclaims with prejudice, and denying Starline's move to amend, that's pretty much in this case, right? It ends the active pursuit of the claims before the district court, but of course, the claim for declaratory relief, which was dismissed without prejudice, could have been refiled by Starline at any point. In fact, that declaratory relief claim related to actions between Starline and TMZ that were at the heart of the arbitration, which Starline is separately pursuing through a separate appeal now before the Ninth Circuit. Right, but that's what this stipulation dismissed, right? It dismissed without prejudice, such that if, again, we have to speculate here, Your Honor, but if you're asking what the potential harm is, Starline was not prepared to go forward with a trial at that point. They dismissed without prejudice and could come back and refile that declaratory relief claim at any point, and we would have a pending appeal, but also a pending claim in a district court seeking relief under the previously dismissed claim. Counsel, what part of Rule 41 are you saying that's under? Your Honor, Rule 41A1A Part 2. Stipulation of dismissal signed by all parties. Yes, and that is defined as a voluntary dismissal without a court order. There is a separate part of the Rule 41A2, which requires the court order. Had the parties submitted a stipulation requiring court order, the court would have had the opportunity and would have been required to look at the stipulation, consider it, sign it if appropriate, and we might be in a different position than we are now where there is no meaningful participation by the court and, as the Ninth Circuit stated in American States Insurance Company v. Dustar, which is cited in Galassa, any action by the district court upon a stipulation that did not require the court's approval is not meaningful consideration. The stipulation submitted in which Starline dismissed its case did not require and did not have any district court participation. I would briefly go on to on the same issue. Even if district court participation were not required under Galassa, which it is, or even if somehow the acts cited by Starline were deemed to be meaningful participation, there would still have to be a showing that the intent of the parties was to dismiss with prejudice rather than without, and there is nothing in the record that indicates that the intent here was to dismiss with prejudice. The stipulation itself says multiple times, it cites the rule that was just referenced, 41A1A2, which does not require a court order and is without prejudice. It says in multiple places that it is without prejudice, and there is no reference in the stipulation to an appeal, to the fact that it was for the purpose of filing an appeal. It was for the purpose of avoiding the final status complex, and the orders that are at issue in this appeal were from October of 2018. The stipulation at issue came four months later. If the purpose was to protect the record such that the appeal could be taken of the October 2018 orders, that stipulation and the dismissal of Starline's remaining claim should have taken place immediately or soon after the court's rulings on the two pending motions in October of 2018. The logical inference is that Starline intended to do what it did, which is dismiss the claim without prejudice, and under the LASA, American States Insurance, James, and the other line of cases, a dismissal without prejudice does not allow jurisdiction for an appeal. And finally, just on this note, the last thing is to the extent that Starline believes or states that this lack of jurisdiction of a fully briefed appeal constitutes some kind of inefficiency or waste of the court and the party's time, this issue was brought to their attention very soon after the appeal was filed. Back in over a year ago, August of 2018, we noted that there was no jurisdiction for this appeal. Rather than attempt to correct the record or perfect the record such that there would be appellate jurisdiction, Starline continued and went forward with the appeal as is. Unless there are questions on that issue, I would like to move briefly to the decision by the district court to deny the motion for leave to file a second amended counterclaim, which Starline's counsel stated was the crux of the merits of this appeal. It's undisputed that this issue resides under an abuse of discretion standard. It's also undisputed that the district court issued a 10-page order in which it considered each of the factors set out in Foman v. Davis and reaffirmed in Ninth Circuit authority. The order is at ER 14-24. The district court analyzed undue delay, bad faith, previous amendments, prejudice to the opposing party, and each of the factors that it is supposed to analyze on such a motion. Therefore, it considered the right law, and unless there was a manifest misapplication of the facts, the district court's opinion should be respected and affirmed. The court noted that four of the five factors it weighed were against permitting amendment, and the fifth was neutral because it could not say unequivocally that Starline acted in bad faith, which is hardly a ringing endorsement, but it considered that factor to be neutral and relied to a great extent on prejudice and undue delay. I want to quickly note the timing because that was gone into by counsel just to make sure it's clear. Starline... Yeah, that's my question because I don't think six weeks from the end of the arbitration is necessarily undue delay. I would like to address that, Your Honor, and I'm glad you asked. Starline states that it obtained the necessary information for its proposed amended counterclaims in the party's arbitration, which took place in February of 2017. It ended on February 21, 2017. That statement by Starline is at SER 245. Between February of 2017 and the May 2018 status conference, the parties submitted five joint reports to Judge Otero informing him of the status of what was going on. There was no mention in any of those five reports of any intent by Starline to amend its cross-claims. Those are in the record at ER 193 to 195 on the docket of the district court. And at the May 2018 status conference, when the parties have been away from the district court for a long time, Starline has had 15 months at this point since the arbitration to consider and prepare its amended counterclaims that it says it should bring. Not only does it not mention the fact that it intends to amend, but when the court asks counsel for Starline about setting a trial, counsel for Starline said no problem setting it for trial, Your Honor. That's at ER 27. And I encourage Your Honors to review again the transcript from that status conference, because the court goes on to set dates, trial dates, discovery cutoff dates, summary judgment motion dates, all of which were based on Starline's statement that the case should be set for trial without a word about an amendment. Amendment only came up when EHM's counsel went to Starline and said, are you going to amend to take out all of the claims that were already arbitrated? And even at that point, Starline did not say it intended to add anything. It said it would do that, and it took another until late July, another six weeks before it provided a counterclaim that was very different from what it said. It added parties, it added claims, and it added new allegations and facts. And I'll just say as my time is ending, we are unaware of a single case in which a district supports denial of leave to amend, which is supported by factual findings of prejudice and undue delay, as was done here. It was reversed by this court. This is in the discretion of the district court. If you look at the order and what the delay and prejudice were, it was fully justified and should not be disturbed by the panel. Unless Your Honors have any questions, my time has run out. Thank you. The fact of the matter is, after all, Starline filed in the record, and I already referenced it for Your Honors, the memorandum of confidentiality of facts and law, and advised the district court that Florida voters had essentially abandoned, they were the plaintiffs, they were the ones who sued. They had abandoned the complaint. And more poignantly, for the one claim that was left against TMZ, and if I could digress here, as just earlier you mentioned, as Florida voters, the court has dispositively dismissed all of the claims against Florida voters They did not contend that as Florida voters, even though a party member sued, even though TMZ somehow has shown an interest in participating to muddy the waters. So when Starline advised the district court, Starline specifically told the district court this statement. This court dismissed all Starline's claims against Florida voters and ordered all Starline's claims against TMZ to arbitration, except for its declaratory relief claim. Therefore, that those arbitration claims are not related to this case. So the whole point that there was anything pending before the court at the time is just not true. And in fact, the distinguishing factor on the Golaza case, as was pointed out by defense, and Golaza was running on a different section of the FRCP, where you about having dismissed, treating it as a fact matter is the district court. If the intent of American States case to manage the development of the section, thereby facilitating efficiency. That's the management we're talking about. And try to go uphill on that one by them. Practicality rule, it's not a gift. It's not gratuity. Practicality. Practicality rule. Practically the end of the case. As far as the actor for the motion to amend, answer. So Warner Brothers wants to now break the seal on this. They wanted it stopped. And now they wanted it to count against our, we think that's unfair. And the trial court application of the not correct. And it was non-prejudicial. I storyline it's right to have claims decided on merit. And unless you have a specific question, I see I'm taking away the ether. Thank you for the opportunity to make this presentation and good to see you. Justice Clifton. Again. Thank you very much. Counsel. Hollywood will be. Take up my choice software. Versus.
judges: Wardlaw, Clifton, Hillman